2010 Ark. App. 781

**Michael PINE, Sr. and Lisa Hoffman, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES & Minor Child, Appellees.**

**No. CA 10–685.**

Court of Appeals of Arkansas.

Nov. 17, 2010.

Deborah Ruth Sallings, Little Rock, for appellants.

Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, Tabitha Baertels McNulty, Little Rock, for appellees.

DAVID M. GLOVER, Judge.

Appellants, Lisa Hoffman and Michael Pine, appeal the termination of their parental rights to their son, M.P., who was born on August 15, 2008.[1] On appeal, appellants argue that the termination of their parental rights was not in M.P.'s best interest and that the State failed to present sufficient proof of the grounds specified in the termination order. We affirm the termination.

*Preliminary Matters*

On January 7, 2009, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency/neglect of M.P. based upon three reports of inadequate supervision and intoxication and one report of throwing a child. Pine was arrested for third-degree domestic battery after the first report, and Hoffman, who became combative with police officers, was arrested for second-degree battery, third-degree assault, endangering the welfare of a minor, and obstructing governmental operations after the third report. The trial court granted the petition for emergency custody on January 7, 2009.

On January 14, 2009, the trial court found that probable cause existed for removing M.P.; that it was in his best interest to remain in DHS custody; and that it was contrary to M.P.'s welfare to be returned to appellants because Hoffman was incarcerated and Pine had not yet established paternity and was not present at the hearing. Hoffman was awarded supervised visitation upon her release from jail on the condition that she refrain from being under the influence of illegal drugs or alcohol. Pine was not awarded visitation.

On February 18, 2009, the trial court adjudicated M.P. dependent/neglected based upon parental unfitness due to the parties' continued alcohol abuse and domestic violence. The trial court ordered M.P. to remain in DHS custody and ordered supervised visitation for appellants twice a week for one hour.

At the review hearing on May 13, 2009, the trial court continued custody of M.P. in DHS, finding that it was contrary to M.P.'s welfare to be returned to appellants because Hoffman was currently in inpatient treatment at Decision Point, neither parent had maintained stable housing or employment, and Hoffman had not sufficiently addressed her addiction. The trial court was also concerned that Pine had not yet established paternity.[2]

A second review hearing was held on September 23, 2009. The trial court found that it was in M.P.'s best interest to remain in DHS custody, noting M.P.'s medical fragility and the need to be transitioned into the home; it awarded unsupervised visitation to appellants once a week for four hours in their home. A permanency planning hearing was set for December 16, 2009.

On November 18, 2009, an emergency hearing was held regarding the unsupervised visitation because Hoffman tested positive for alcohol on November 4, 2009. An order was entered on November 19, 2009, rescinding unsupervised visitation and reinstating only supervised visitation twice a week for two hours per visit.

---

1. Prior to the filing of a dependency/neglect petition, a protective-services case had been opened due to the fact that M.P. tested positive for marijuana at birth.

2. The order establishing Pine's paternity was entered on September 24, 2009.

A permanency planning hearing was held on December 16, 2009. The trial court changed the concurrent plan of reunification/adoption to adoption, finding that M.P. could not be returned to appellants that day and that they had not made significant progress for reunification; the court further found that they had not remedied the conditions that caused removal and that they had not shown that they could safely parent. The trial court noted that Hoffman had tested positive for alcohol on November 4, 2009, and that although she was living with Pine, she was still married to another man. With regard to Pine, the trial court found that he was arrested for his third DWI on December 7, 2009, and that he had not maintained sobriety or adequately addressed his alcohol problems. The trial court ordered that supervised visitation be continued once a week for two hours, but it also set a termination-of-parental-rights hearing for March 12, 2010.

DHS filed a petition for termination of parental rights on February 4, 2010, alleging that it was in M.P.'s best interest for parental rights to be terminated, considering the likelihood that M.P. would be adopted and the potential harm of returning M.P. to appellants. DHS alleged three grounds for termination: (1) M.P. had been adjudicated dependent/neglected and had continued out of the home for twelve months, and despite a meaningful effort by DHS the parents had not remedied the conditions that caused removal; (2) M.P. had lived outside the home for twelve months and the parents had willfully failed to provide significant material support or to maintain meaningful contact with M.P.; (3) other factors arose subsequent to the filing of the original petition that demonstrated that return of M.P. to appellants was contrary to his health, safety, or welfare, and despite offers of appropriate family services, appellants had manifested an incapacity or indifference to remedy the subsequent factors that prevented the return of M.P. to their custody.

### TPR Hearing

At the termination hearing, Darla Hash, the DHS caseworker, related the circumstances that necessitated the need to initially open a protective-services case on M.P. and to eventually remove him from his parents' custody. Hash expressed her concern regarding both appellants' continued use of alcohol. According to her, appellants would go for weekly alcohol testing (when she called) but that it was not really random testing; that Hoffman tested positive for alcohol on December 31, 2009, and Pine tested positive for alcohol on January 15, 2010. Hash did not believe the parents had remedied the conditions that caused M.P. to come into DHS custody. She said that although the visitation with M.P. was appropriate, Pine had been convicted in February 2010 of being in actual control of a vehicle while intoxicated, his second offense, and that, in her opinion, neither parent had shown that they could safely parent and take care of M.P., nor had either of them maintained sobriety or adequate stability. Hash stated that there was a high likelihood that M.P. would be adopted if parental rights were terminated. She explained that M.P. was a medically fragile child who had been diagnosed with Fetal Alcohol Syndrome and a tethered spinal cord, and that he had ongoing issues with weight gain. She also said that it was suspected that M.P. suffered from Noonan's Syndrome, but that it could not be diagnosed until after M.P. turned age two. Hash explained that while appellants were given unsupervised visitation at one point, it did not last because Hoffman tested positive for alcohol. Hash recommended termination of parental rights.

It was Hash's opinion that both appellants were cooperating with DHS and attending counseling. However, she said that when she discussed with them their positive tests for alcohol, both of them denied that they had used alcohol, which she did not believe because they had a long history of alcohol abuse and both admitted that they are alcoholics. Hash said she did not believe that either of the appellants (because of the extent of their alcohol issues) were able to properly care for M.P.; that alcohol issues were why M.P. came into DHS care; and that, after more than a year, there were still problems with positive tests for alcohol and operating a motor vehicle while intoxicated. Hash testified that even though Hoffman had been through a twenty-eight-day residential treatment program for alcohol, had continued individual counseling, and was attending AA meetings, her counselor's report stated that she would still benefit from an intensive outpatient program due to her active substance-abuse problem. Hash then stated that although Pine's drug and alcohol assessment early in the case indicated that he did not have an active alcohol problem, and he had not participated in any kind of intensive outpatient or residential treatment program, he had subsequently incurred criminal charges as a result of his drinking and was now required by court order to go to a treatment program, which indicated that his drinking problem had gotten worse.

Hoffman testified that she was attending AA meetings and counseling and was maintaining her sobriety and refraining from drinking alcohol. She said that she and Pine were going to AA three times a week, but she had no proof to verify that, and she admitted that she did not have an AA sponsor at that time. She said that she had not looked into going to outpatient treatment, but that she was willing to look into it if Pine would do it with her. She said that Pine did not have a driver's license, and she would not allow him to drive with M.P. without a driver's license. Hoffman blamed her positive alcohol tests on the fact that she was sick and taking several different types of medication; she also admitted that she did not explain at the testing service that she was on medication. Hoffman testified that the last time she drank alcohol was January 2009, when M.P. was taken away. It was her belief that she and Pine had remedied the reasons that M.P. was placed in DHS custody.

Pine admitted he was in jail for about six hours for his last DWI, but he said he had completed all of his jail time and work-release hours. He stated that he had to go to Decision Point as a result of the DWI charge, but he denied that he had a drinking problem, asserting that the last time he drank was when he got the DWI two or three months ago. He acknowledged that his drinking violated the trial court's orders. Although he stated that he did not drink at all now, he agreed that he had a relapse. With regard to the positive alcohol screen in January 2010, Pine claimed that he was sick and had been taking cough medicine and that was what caused the positive alcohol test. He acknowledged that M.P. had specialized medical needs, but it was his opinion that he and Hoffman were able to appropriately meet those needs, and he did not think that his parental rights should be terminated.

The trial court granted the petition to terminate appellants' parental rights. In its findings, the trial court noted that unsupervised visits were stopped because Hoffman had a positive alcohol screen in November 2009; that there were specific findings made at the emergency hearing that the trial court did not believe that cough medicine was the reason for the positive alcohol screen; that Pine was ar-

rested for control of a vehicle while under the influence; that Hoffman tested positive for alcohol in December 2009; and that Pine tested positive for alcohol in January 2010. The trial court found that alcohol was still an ongoing problem for both appellants, and that although they loved M.P. and could be good parents for two hours a week, the question was whether they could keep M.P., who was medically fragile, safe and out of harm's way. The trial court noted that M.P.'s problem with Fetal Alcohol Syndrome was clearly a result of Hoffman drinking while she was pregnant. The trial court stated that it did not have to wait until actual harm occurred to M.P., and that despite meaningful efforts by DHS, appellants had failed to correct the conditions that caused M.P.'s removal. The trial court found that M.P. was adoptable and that it was proven by clear and convincing evidence that it was in his best interest for parental rights to be terminated because if he was returned to his parents he would continue to be exposed to alcohol abuse and instability as a result of his parents' alcohol addiction and their failure to abstain from drinking alcohol.

In the order of termination, the trial court found two grounds—that M.P. had been adjudicated dependent/neglected and had continued out of his parents' custody for twelve months, and despite meaningful efforts by DHS, the parents had not corrected the conditions that caused removal; and that other factors arose subsequent to the filing of the original petition for dependency/neglect that demonstrated that return of the juvenile to the parents was contrary to his health, safety, or welfare, and that despite the offer of appropriate family services, the parents had manifested the incapacity or indifference to remedy the subsequent issues that prevented return of M.P. to the custody of the parents. Appellants now appeal, arguing that there was insufficient evidence that termination of parental rights was in M.P.'s best interests and that there was insufficient evidence to support either ground relied upon by the trial court for termination of parental rights.

### Standard of Review

■ Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543, 2010 WL 2612681. Grounds for termination of parental rights must be proven by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, 2010 WL 2522197. The appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007).

■ In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking

into consideration the (1) likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Repl.2009). Additionally, the trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. *See* Ark.Code Ann. § 9–27–341(b)(3)(B). However, proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.

## Best Interests

■ In this case, the trial court found that there was a high likelihood that M.P. would be adopted, a finding that is not contested by appellants on appeal. The trial court also found that there was potential harm to M.P.'s health and safety if he was returned to appellants. Appellants argue on appeal that it was not in M.P.'s best interests for their paternal rights to be terminated, citing *Davis v. Arkansas Dep't of Health & Human Servs.*, 98 Ark. App. 275, 254 S.W.3d 762 (2007), for the proposition that while the potential harm of returning a child to his parents is not required to be proven by clear and convincing evidence, that after consideration of all the factors, there must be clear and convincing evidence that termination of parental rights is in the best interest of the child. Appellants contend that the only reason their parental rights were terminated was because they were not in full recovery from their alcoholism; that while there is no doubt that it would be better for a child to live with sober parents rather than alcoholics, it is unrealistic to believe that the State could permanently remove every child from alcoholic parents; and that while not perfect, they were

working on becoming sober, had done "pretty well," and were willing to do more.

■ A trial court is only required to consider potential harm to a child's health and safety that might come from continued contact with the parents; there is no requirement to find that actual harm would result or identify the potential harm. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The potential-harm analysis is to be conducted in broad terms. *Id.* Here, M.P. suffers from Fetal Alcohol Syndrome as a result of Hoffman's drinking while she was pregnant, which has caused a whole host of medical problems for M.P. (it was also suspected that he suffered from Noonan's Syndrome). During the pendency of the case, Hoffman tested positive for alcohol on two occasions and Pine not only tested positive for alcohol but was also arrested for being in control of a vehicle while intoxicated. The trial court's best-interest finding is not clearly erroneous.

## Ground for Termination

■ The trial court terminated appellants' parental rights on two grounds— Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a* ) (dependent-neglected juvenile out of parents' custody for twelve months and parents have not corrected the conditions that caused removal) and Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(*a* ) (other factors arose subsequent to the filing of the original petition that demonstrate return of custody to the parents is contrary to juvenile's health, safety, or welfare and parents have manifested incapacity or indifference to remedy those issues). Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett, supra.* Appellants argue that it was error for the trial court to terminate their parental rights under either of these grounds due to their failure or inability to achieve sobriety with-

in the time frame the court believed to be sufficient. They contend that they are "working the plan" but simply need more time to achieve the goals, and they assert that they are committed to achieving the requirements for reunification. This argument does not provide a basis for reversal.

Arkansas Code Annotated section 9–27–341(a)(3) provides:

> The intent of this section [termination of parental rights] is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective.

The overriding intent of the legislature is to provide the state's children with safe, permanent homes. *Meriweather, supra.* Here, M.P. was removed from his parents' home when he was almost five months old. At the time of the termination hearing in March 2010, M.P. was more than one and one-half years old and had been out of his parents' custody for over a year. While appellants had worked on achieving sobriety, they each tested positive for alcohol as late as December 2009 and January 2010, respectively, and Pine had been arrested for being in control of a vehicle while intoxicated. Although it is apparent that appellants love M.P., there is clear and convincing evidence that the ground set forth in Arkansas Code Annotated section § 9–27–341(b)(3)(B)(i)(*a*) was proven, and the trial court's findings under this ground were not clearly erroneous.

Affirmed.

PITTMAN and GRUBER, JJ., agree.