SLIP OPINION

Cite as 2016 Ark. App. 480

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–16–578

| | |
|---|---|
| QUINSHONDA WARE<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILDREN<br><br>APPELLEES | **Opinion Delivered:** October 19, 2016<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT, FORT<br>SMITH DISTRICT<br>[NO. 66JV-2010-73]<br><br>HONORABLE LEIGH ZUERKER,<br>JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Appellant, Quinshonda Ware, appeals from an order of the Sebastian County Circuit Court terminating her parental rights to her children D.S., born August 28, 2007; L.S., born October 9, 2008; S.S., born October 13, 2009; and M.S., born January 29, 2013. She presents three points on appeal: (1) there was insufficient evidence to support the grounds for termination; (2) there was insufficient evidence that termination was in the children's best interest; and (3) the circuit court erred in terminating her parental rights when placement with a relative was being considered. We affirm the circuit court's order.

The events that led to the termination began on September 19, 2014, when local law enforcement contacted the Arkansas Department of Human Services (DHS) for assistance with appellant's four children. Appellant had left the children with her mother and failed to return. The grandmother subsequently called the local police, stating that she could no longer

care for the children and had been unable to locate appellant. The DHS worker was also unable to make contact with appellant, and a 72-hour hold was placed on the children. The DHS caseworker's affidavit attached to the petition for emergency custody stated that there had been true findings of maltreatment against appellant in reference to her illegal drug use; that the children had been in foster care from January 22, 2010, through March 2011; and that St. Francis County DHS had opened a protective-services case on the family on July 14, 2014, as a result of appellant's drug use.

The court granted DHS's petition for emergency custody and on December 3, 2014, entered an order adjudicating the children dependent-neglected based on neglect and parental unfitness due to appellant's having left her children and failing to retrieve them as previously arranged. The court also noted that appellant had refused to return calls from the grandmother and the police officers who were attempting to locate her. The court found that this put the children at a "substantial risk of serious harm."

In a review order entered on May 11, 2015, the court found that DHS had made reasonable efforts to provide family services to achieve the goal of reunification and that appellant had completed a psychological evaluation; visited regularly; and obtained housing, income, and transportation. The court also found, however, that appellant had not completed parenting classes or a drug-and-alcohol assessment and that she had tested positive for numerous illegal substances during the review period.

In a permanency-planning order entered on August 6, 2015, the court stated that the goal of the case continued to be reunification with a concurrent goal of adoption following

SLIP OPINION

termination of parental rights. The court made it clear that placement of the children "must occur within a period that is consistent with the juveniles' developmental needs and shall be no later than three months from the date of this hearing [which occurred on July 21, 2015]." The court found that appellant had not complied with the case plan and court orders, specifically finding that she had not completed parenting classes, had not completed parenting-without-violence classes or any counseling recommended in her psychological evaluation, had refused outpatient treatment as recommended by her drug-and-alcohol assessment, and had tested positive for numerous illegal substances throughout the case.

The court held a fifteen-month review hearing on October 27, 2015, and entered a fifteen-month permanency-planning hearing order on November 23, 2015, again finding that appellant had failed to complete parenting-without-violence classes or individual or family counseling as recommended by her psychological evaluation, had refused outpatient treatment as recommended by her drug-and-alcohol assessment, and had tested positive for numerous illegal substances throughout the case. No relatives were at either of these permanency-planning hearings, and the November order specifically stated that the children had not been placed in a relative's home.

At the termination hearing held on January 29, 2016, and February 22, 2016, appellant admitted that she had continued to test positive for drugs throughout the case, had not completed parenting-without-violence classes, had failed to complete individual counseling, and had not completed a drug-and-alcohol treatment program. She testified that she had lived in three residences since the case had begun. She said that first she lived in a rental

home for about nine months and then lived with her boyfriend for about nine months. She testified that she had not known at that time that her boyfriend had a criminal history. She had moved out of that home a week before the termination hearing and was living with a friend in a one-bedroom apartment. She testified that she had obtained a four-bedroom house to rent and was "due to move in" on the day of the termination hearing. She also testified that she did not own a vehicle but for several months had been driving a car that was owned by her employer. The car was not large enough to transport all of her children.

Bonnie Zirbel, an adult-outpatient drug-and-alcohol counselor at Western Arkansas Counseling and Guidance Center, testified that appellant had completed a drug-and-alcohol assessment in June 2015 and that the recommendation had been a phase II twelve-week outpatient program. Appellant refused the services. Appellant returned to the center in September and tested positive for Lorazepam, marijuana, and alcohol. She returned again in November and tested positive for marijuana and alcohol. On December 8, 2015, she tested positive for amphetamines, methamphetamine, THC, and alcohol and then for hydrocodone and THC on December 15, 2015. She continued to test positive for various substances in several drug screens conducted in January 2016. The center changed her treatment recommendation to a phase III sixteen-week outpatient program. Appellant briefly entered that program but continued to test positive for drugs and was then recommended for residential treatment. Ms. Zirbel testified that appellant was a no-show several times despite having been scheduled for intake on several occasions.

Appellant's DHS caseworker, Lisa Walton, testified that appellant did not attend the

recommended drug treatment, did not provide proof of having attended any NA/AA meetings, and did not attend any of the counseling recommended in her psychological evaluation. Ms. Walton also testified that the children were adoptable and that they would be subject to potential harm if returned to appellant due to her continuing drug issues and failure to complete the necessary services, including parenting classes, drug treatment, and counseling. Finally, Ms. Walton also testified that appellant did not have stable and adequate housing or transportation sufficient to accommodate all of her children.

The attorney ad litem argued that the children were entitled to permanence and that they could not safely return to appellant at this point. Her recommendation was termination of appellant's parental rights.

At the conclusion of the hearing, the court stated that it was granting the petition for termination. The court noted that the children had been out of the home for seventeen months and that appellant had not corrected the conditions that caused their removal. It focused on appellant's continued drug use throughout the case and her failure to seek or complete any drug-treatment program despite the recommendations. The court found that there was little likelihood that, given additional time, appellant could comply with the recommendations of the court and complete her case plan. The court's order terminating appellant's parental rights was entered on April 1, 2016, and included the court's findings that DHS had proved two grounds for termination by clear and convincing evidence: (1) the children had been adjudicated dependent–neglected, had been out of the parent's custody for twelve months, and the parent had failed to remedy the conditions that caused their removal;

and (2) aggravated circumstances, that being little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i), (ix) (Repl. 2015). The court specifically found that DHS had made reasonable efforts to provide family services and to finalize a permanency plan for the children but that appellant still lacked stable housing, failed to complete drug treatment, continued to have positive drug screens throughout the case, failed to complete the counseling recommended in her psychological evaluation, and failed to complete or show proof of completion of parenting-without-violence classes.

The court also found that it was in the children's best interest to terminate appellant's parental rights, specifically considering adoptability and potential harm. The court found that the juveniles were adoptable based on Ms. Walton's testimony and the history of the case, including the fact that the children were healthy and had no conditions that would bar adoption. The court found that the children would be at great risk of potential harm due to appellant's lack of stable housing and there being little likelihood that continued services to the family would result in successful reunification.

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential harm to the child if custody

SLIP OPINION

is returned to a parent. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Adoptability is not an essential element but is rather a factor that the trial court must consider. *Id*. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, at 9, 444 S.W.3d 366, 372. Credibility determinations are left to the fact-finder. *Id*. at 8, 444 S.W.3d at 371.

For her first point on appeal, appellant contends that the evidence was insufficient to support either of the court's findings of grounds for termination. One ground is sufficient to support the court's termination of parental rights. *King v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 368, at 5. We turn to the court's finding of aggravated circumstances, specifically that there is little likelihood that services to the family will result in successful reunification. At the time this case was initiated, a protective-services case had been opened on the family in St. Francis County two months earlier as a result of appellant's drug use. Throughout this case, appellant continued to test positive for illegal substances. Although several different drug-treatment programs were recommended and offered, appellant refused to address her drug issues or complete a treatment program. Appellant continued to demonstrate an inability or unwillingness to accept rehabilitation services offered by DHS to address her drug use. The circuit court's finding that there was little likelihood that continued services to the family would result in successful reunification is not clearly erroneous. Because we find no clear error with the circuit court's finding on this ground, it is unnecessary to address the second ground. *Sarut v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 76, at 9, 455 S.W.3d

341, 347.

Next, appellant argues that the evidence was insufficient to demonstrate that termination was in the best interest of her children. Specifically, she contends that there was insufficient evidence for the court to consider adoptability because the only testimony regarding this issue was from the assigned DHS case worker, who gave no factual basis for her opinion. She also argues that there was insufficient evidence to support the trial court's conclusion that the children faced a substantial risk of harm if returned to her.

First, the circuit court is not required to find by clear and convincing evidence that the children are adoptable but merely must consider the likelihood of adoption if parental rights are terminated. *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, at 7, 492 S.W.3d 113, 117. Generally, a caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Abram v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 437, at 4. The caseworker in this case, who knew the children, testified that the children were adoptable. The court specifically found that the children were adoptable based on the caseworker's testimony, the history of the case, and the fact that the children were healthy and had no conditions that would bar adoption. Second, the court found that the children were at great risk of potential harm if returned to appellant given her lack of stable housing and continued drug use.[1] The potential-harm analysis is to be conducted in broad terms. *Pine*, 2010 Ark. App. 781, at 11, 379 S.W.3d at 709. It is the "best interest" finding that must be

---

[1]We note also that appellant had not attended counseling or completed parenting-without-violence classes.

supported by clear and convincing evidence. *Id.* We hold that the court's finding that it was in the children's best interest to terminate appellant's parental rights was not clearly erroneous.

Finally, appellant argues that we should reverse the termination because DHS was considering the children's paternal grandmother for placement, and the law allows additional time to place the child with a relative. As authority, she cites Ark. Code Ann. § 9–28–105. This statute provides that, in custodial placements by DHS "in foster care or adoption," preferential consideration shall be given to an adult relative over a nonrelated caregiver if the relative meets all of the relevant child-protection standards and it is in the best interest of the child to be placed with the relative. Ark. Code Ann. § 9–28–105. The record does not reflect that appellant raised this issue to the circuit court. Therefore, this argument is not preserved for appeal. *Landis-Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 673, at 7, 386 S.W.3d 641, 646.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*Dusti Standridge*, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.