RAYMOND R. ABRAMSON, Judge
Appellant Brianna Jones appeals an order by the Hempstead County Circuit Court terminating her parental rights to her daughters, S.B. and K.J. On appeal, Jones argues that the circuit court erred in terminating her parental rights because the Arkansas Department of Human Services (DHS) failed to meet its burden of proof. We affirm.[1]
On September 6, 2016, the juveniles were removed from the physical and legal custody of Jones after their nine-day-old sibling, A.J., suffered an unexplained cranial fracture and died. K.J. had bug bites all over her arms, face, and legs, and her feet were blackened because she had no shoes. The home was filthy with piles of dirt, debris, unclean dishes, old food, urine and dog feces, condom packages, and trash. Tobacco, open chemicals, and firearms were all within the children's reach. DHS assumed emergency custody over then four-year-old S.B. and two-year-old K.J. Jones had an extensive history with DHS, including a true finding for environmental *315 neglect in 2012 and a previous dependency-neglect case from 2013-2015.
On November 3, 2016, the circuit court adjudicated S.B. and K.J. dependent-neglected on the basis of Jones's stipulation to neglect and parental unfitness. The circuit court found Jones's "failure to provide a shelter that does not pose a risk or safety hazard to the juveniles" was a basis for its decision. The goal of the case was set as reunification, and Jones was ordered to participate in parenting classes, submit to random drug screens, and participate in counseling and homemaking services.
At the December 8, 2016 hearing, the circuit court found Jones in partial compliance with the case plan in that she had been visiting the children and her drug screens were negative, but she had not yet completed counseling. The court also ordered Jones to undergo a psychological assessment. Dr. Betty Feir conducted the psychological evaluation of Jones and concluded that Jones had possible borderline personality and bipolar disorders, and had long-standing problems with DHS. Jones was also diagnosed by a counselor "with adjustment disorder, with mixed anxiety and depressed mood." Dr. Feir recommended that Jones's parental rights be terminated because she did not appear to be capable of parenting and did not have the emotional or mental capacity to safely care for her children.
A review order was entered on February 13, 2017, after the court held a hearing on February 9. The circuit court found Jones had been visiting with the children, had tested negative on drug screens, had participated in individual counseling, and had completed the psychological evaluation. However, the cleanliness of Jones's home remained an issue, and the court ordered that unsupervised visits with the children could not begin until Jones demonstrated that she could maintain a safe, clean, and appropriate home for herself and her children.
Another review hearing was held on May 11, 2017, and the court found that Jones had continued to abuse illegal substances and had not participated in any form of substance-abuse treatment. Jones also admitted having been involved in a romantic relationship with a man with whom she had a history of abusing drugs and alcohol, and who was, at the time of the hearing, being detained in the Hempstead County jail.
At the review hearing on July 20, 2017, the court found that Jones had complied with the case plan in that she had completed a psychological evaluation, drug assessment, parenting classes, inpatient drug treatment, submitted to random drug screens, participated in home-maker services and counseling, and had visited the children regularly. The court also noted that Jones's home had recently been in a more appropriate condition for the children's habitation. Specifically, the court wrote that it "would like to see the mother sustain her sobriety and the appropriateness of her home."
Jones's home burned down the next month, and on August 17, Jones tested positive for amphetamines, methamphetamine, and cocaine. After her home burned, Jones stayed with her ex-boyfriend's mother.
On September 14, 2017, the court held a permanency-planning hearing, just over a year after the children's removal from Jones's home. The court found that while Jones had completed some services, she had also "tested positive for illegal substances throughout much of the case" and "recently tested positive for illegal substances again." In the months that followed, Jones continued to decline. She again tested positive for amphetamine and *316 methamphetamine on December 6, 2017, and three weeks later--on December 27, tested positive for amphetamine. In a report filed on January 11, 2018, the court-appointed special advocate stated that she had learned that Jones had been kicked out of outpatient substance-abuse treatment "due to non-compliance, not attending meetings or classes, and relapses."
Following a January 11, 2018 hearing, the circuit court found that Jones had not complied with the case plan and court orders. She was discharged from outpatient drug treatment for noncompliance. She had tested positive for illegal substances as recently as the month before, and she still lacked housing of her own. As the court noted, Jones "ha[d] demonstrated little progress toward the goal of the case plan or remedying the issues that prevent restoration of her custody."
On March 5, the circuit court entered an order terminating reunification services to Jones, finding that there was little likelihood that services to the family would result in successful reunification. On March 15, the circuit court held a termination hearing. The court received testimony from several witnesses, including Machell Whitmore, the DHS caseworker assigned to the case, and Amy Donahue, whom the court, without objection, recognized as an expert in drug-and-alcohol counseling. The court also heard testimony from Emeki Strong, a mental-health therapist; Terry Yoya, a supervisor for the Hempstead County family-services workers; and Lashelle Hamilton, a CASA volunteer. Lisa Forte, an adoption specialist, also testified. Jones testified on her own behalf at the termination hearing. The court found all the witnesses credible except for Jones.
The court terminated Jones's parental rights on the basis on two statutory grounds: "failure to remedy" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(a) and "aggravated circumstances" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(3)(A)-(B)(i) . The circuit court also found that it was in the children's best interest to terminate Jones's parental rights. This appeal is now before us.
The standard of review in appeals of terminations of parental rights is de novo, but we reverse a circuit court's decision to terminate parental rights only when it is clearly erroneous. Ullom v. Ark. Dep't of Human Servs. , 340 Ark. 615, 12 S.W.3d 204 (2000) ; Mitchell v. Ark. Dep't of Human Servs. , 2013 Ark. App. 715, 430 S.W.3d 851 ; Brewer v. Ark. Dep't of Human Servs. , 71 Ark. App. 364, 43 S.W.3d 196 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. Wade v. Ark. Dep't of Human Servs. , 337 Ark. 353, 990 S.W.2d 509 (1999) ; Knuckles v. Ark. Dep't of Human Servs. , 2015 Ark. App. 463, 469 S.W.3d 377 ; Hopkins v. Ark. Dep't of Human Servs. , 79 Ark. App. 1, 83 S.W.3d 418 (2002).
At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. Pine v. Ark. Dep't of Human Servs. , 2010 Ark. App. 781, at 9-10, 379 S.W.3d 703, 708-09. Adoptability is not an essential element; rather, it is a factor that the circuit court must consider.
*317 Tucker v. Ark. Dep't of Human Servs. , 2011 Ark. App. 430, at 7, 389 S.W.3d 1, 4-5. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. Pine , 2010 Ark. App. 781, at 11, 379 S.W.3d at 709.
The potential-harm analysis is to be conducted in broad terms. Shawkey v. Ark. Dep't of Human Servs. , 2017 Ark. App. 2, at 5, 510 S.W.3d 803, 806. It is the best-interest finding that must be supported by clear and convincing evidence. Id. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997). Credibility determinations are left to the fact-finder. Kerr v. Ark. Dep't of Human Servs. , 2016 Ark. App. 271, at 6, 493 S.W.3d 342, 346. We note the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).
Jones argues that the evidence did not support the court's findings that DHS adequately proved the statutory grounds for termination. As we have repeatedly held, DHS need only prove one ground for termination, so we must affirm if the evidence supports at least one of the statutory grounds at issue in the case. Martin v. Ark. Dep't of Human Servs. , 2016 Ark. App. 521, at 11, 504 S.W.3d 628, 635. Having reviewed the record, we conclude that there was sufficient evidence to support the circuit court's decision on both grounds. The same evidence that supports the circuit court's best-interest decision also supports its statutory-grounds findings.
Under the "aggravated circumstances" ground, a court may terminate parental rights if the court has determined that there is little likelihood that further services will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix). This type of aggravated circumstance occurs when a parent is not following through with offers of assistance, is not completing basic goals of the case plan, and is not making significant progress. Aday v. Ark. Dep't of Human Servs. , 2010 Ark. App. 677, at 4, 2010 WL 3902438. Despite seventeen months of services, Jones had not demonstrated sufficient parenting skills to regain custody of the children or to be trusted with a trial placement or unsupervised visitation.
This is most evidenced by the instability caused by her continuing use of illegal drugs during the case. Jones would bring alcohol to DHS visits, and she tested positive for drugs as late as December 2018--fifteen months after the children's removal. She was also expelled from an outpatient-treatment program and was arrested for possession of marijuana a little more than a month before the termination hearing. Despite the reasonable efforts and appropriate services provided by DHS, Jones did not obtain any true benefit from DHS's services. See Chapman v. Ark. Dep't of Human Servs. , 2014 Ark. App. 525, at 4-5, 443 S.W.3d 564, 567 (affirming termination because of the voluminous evidence of continued parental instability despite working with DHS).
Sufficient evidence supports the circuit court's finding of aggravated circumstances in this case. A parent's continued inability to protect and care for his or her child and failure to benefit from the services provided demonstrate little likelihood *318 that further services will result in a successful reunification. Bentley v. Ark. Dep't of Human Servs. , 2018 Ark. App. 374, 554 S.W.3d 285. A finding of aggravated circumstances does not require DHS to prove that meaningful services toward reunification were provided. Willis v. Ark. Dep't of Human Servs. , 2017 Ark. App. 559, at 9, 538 S.W.3d 842, 849. Yet here, the evidence establishes that DHS offered services to Jones for almost a year and a half, and despite these services, Jones did not demonstrate that she could consistently provide a stable, safe, and appropriate environment for the children. A stable home is one of a child's most basic needs. Selsor v. Ark. Dep't of Human Servs. , 2017 Ark. App. 182, at 6, 516 S.W.3d 314, 318. Jones's actions throughout the case support the circuit court's decision that there was little likelihood of successful reunification.
From our de novo review of the record, we cannot say that the circuit court's finding on aggravated circumstances is clearly erroneous. As we have repeatedly held, DHS was required to prove only one statutory ground, so we do not address the other ground the circuit court found--"failure to remedy." Shawkey , 2017 Ark. App. 2, at 6, 510 S.W.3d at 807.
Jones also argues that the circuit court clearly erred in finding that termination was in her children's best interest. The circuit court considered the Juvenile Code's best-interest factors:
That it is in [S.B. and K.J.'s] best interests to terminate [Jones's] parental rights, including consideration of the likelihood that [K.J.] will be adopted if the termination petition is granted, and the potential harm that would be caused to [S.B. and K.J.] by returning them to [Jones's] custody, specifically addressing the effect on [S.B. and K.J.'s] health and safety. As to [K.J.'s] adoptability, the Court finds that there are over 800 adoptive matches for her, and that she is a healthy little girl, with no impediments to being successfully adopted.[2 ] As to potential harm, the Court finds that if [S.B. and K.J.] were placed in [Jones's] custody, they would likely be subjected to harm in the form of further neglect and parental unfitness, or possibly worse. Specifically, the Court finds that the evidence presented demonstrates that [Jones] lacks the ability to manage her substance abuse, and that she lacks sufficient stability to ensure [that S.B. and K.J.'s] needs are met, including protection of their health and safety. The Court notes that [DHS] has been involved with [Jones] previously, and offered services similar to those offered in this case.
Under the umbrella of the children's best interest, the circuit court specifically considered adoptability and found that there was potential harm to the girls if Jones was given custody. The circuit court's best-interest finding was supported by clear and convincing evidence of Jones's continued drug use. Case law is clear that a parent's continuing use of illegal drugs during a dependency-neglect case poses a risk of harm to a child. Howell v. Ark. Dep't of Human Servs. , 2017 Ark. App. 154, at 6, 517 S.W.3d 431, 435. The Juvenile Code does not require a "specific quantum" of evidence to support a circuit court's finding regarding adoptability; it requires only that if an adoptability finding is made, evidence must exist to support it.
*319 Cole v. Ark. Dep't of Human Servs. , 2018 Ark. App. 121, at 5, 543 S.W.3d 540, 543. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. Strickland v. Ark. Dep't of Human Servs. , 2018 Ark. App. 608, at 10, 567 S.W.3d 870, 876. In the present case, the caseworker testified that K.J. was adoptable and that there were over 800 adoptive matches for her.
The circuit court must consider a parent's compliance and behavior during the entire dependency-neglect case, as well as the evidence presented at the termination hearing, to decide whether the termination is in the children's best interest. Ark. Code Ann. § 9-27-341(a)(4)(B). Here, the circuit court did just that, and we are not left with a distinct and firm impression that the circuit court made a mistake in its findings on the children's best interest. Accordingly, we affirm.
Affirmed.
Gruber, C.J., and Harrison, J., agree.

This is the second time this case is before us. Our court dismissed the appeal for lack of jurisdiction on January 16, 2019. See Jones v. Ark. Dep't of Human Servs. , 2019 Ark. App. 4, 570 S.W.3d 471. On May 2, 2019, our supreme court granted Jones's motion for belated appeal and vacated our opinion. The high court reinstated the appeal, so although Jones has not cured the notice-of-appeal requirements, our court, as directed by the Arkansas Supreme Court, now reaches the merits of this case.

S.B.'s father's parental rights were not terminated; therefore, she remained in his custody.