Cite as 2020 Ark. App. 147

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-620

|  |  |
|---|---|
| JOSUE TOVIAS | **Opinion Delivered** February 26, 2020 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-18-384] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE STACEY ZIMMERMAN, JUDGE |
|  | AFFIRMED |
| APPELLEES | |

## LARRY D. VAUGHT, Judge

Josue Tovias appeals the Washington County Circuit Court's order terminating his parental rights to his child JT2. We affirm.

On May 18, 2018, DHS filed a petition for emergency custody and dependency-neglect against Tovias and Melissa Miranda, who were married at the time of JT2's birth on April 30, 2018. JT2 was born prematurely and remained in neonatal intensive care after his birth. During that time, this case was opened due to a prior case involving JT2's half brother, JT1. In the previous case, No. 72JV-18-95, the Washington County Circuit Court found aggravated circumstances against both parents based on Melissa's physical and emotional abuse of one of her children in front of the other children and Tovias's failure to protect the children. The court terminated Tovias's parental rights to JT1 in Case No. 72JV-18-95, and on April 17, 2019, this court reversed and remanded that order because DHS failed to establish that Tovias

was JT1's parent for the purposes of satisfying the statutory grounds necessary for termination. *Tovias v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 228, at 10, 575 S.W.3d 621, 626 (*"Tovias I"*).

Prior to the reversal of *Tovias I*, DHS filed a second petition to terminate the parents' rights to JT2 in this case, Case No. 72JV-18-384 on March 4, 2019. On March 8, Tovias filed a motion asking the court to reinstate reunification services, which it had previously terminated. The court denied the motion due, in part to the caseworker's testimony that, given the severity of abuse suffered by JT1, she was not aware of any services that would lead to a successful reunification in this case.

Following a hearing, the court terminated the parental rights of both of JT2's parents on a finding of aggravated circumstances. While there was evidence that Tovias had been working the case plan, there was also evidence that he continued to reside with Melissa despite her history of abusing the children. Sally Naismith, a CASA volunteer, testified that she had seen Tovias and Melissa together at Tovias's home and did not believe that he would keep Melissa away from JT2. Tovias testified that Melissa was a "good mother," and he admitted that she stayed at his home "more nights than not." Kari Horton, a DHS caseworker, testified that she did not feel Tovias was truthful and did not believe that Tovias would keep JT2 away from Melissa. The court found that Tovias had blatantly attempted to deceive the court about his ongoing relationship with Melissa. The court found that "the father has also shown that he is willing to lie and cover for the mother, which tends to show that he prioritizes his relationship with her over the well-being of [JT2]." This appeal followed.[1]

---

[1]JT2's mother, Melissa Miranda, is not a party to this appeal.

Termination-of-parental-rights cases are reviewed de novo. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, at 9, 379 S.W.3d 703, 708. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.*, 379 S.W.3d at 708. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.*, 379 S.W.3d at 708. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 379 S.W.3d at 708. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*, 379 S.W.3d at 708. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*, 379 S.W.3d at 708. As with all issues addressing child placement, the appellate court affords heightened deference to the circuit court's superior position to observe the parties personally and weigh credibility. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 215, 40 S.W.3d 286, 292–93 (2001).

Tovias's first point on appeal is not a challenge to the termination of his parental rights but to an earlier decision by the court to deny his motion to reinstate reunification services, which had previously been suspended by order of the court. Before addressing the merits of this argument, we must address DHS's only response, which is that Tovias has not properly appealed the denial of his motion and that it is therefore not properly before us for our review. DHS's response to this point on appeal is less than one page long and does not attempt to

3

address the merits of the issue. DHS argues both that the denial of Tovias's motion of reunification services is not final and appealable and that he did not file a timely appeal. Even assuming that DHS is presenting these two incongruous arguments in the alternative, they have no merit.

First DHS argues that the denial of Tovias's motion is not one of the immediately appealable items listed in Rule 6-9(a)(1)(A) of the Rules of the Arkansas Supreme Court and Court of Appeals and that Tovias did not obtain a certificate allowing for an immediate appeal of the issue pursuant to Arkansas Rule of Civil Procedure 54(b). This argument would be applicable if Tovias were trying to immediately appeal the denial of his motion for reunification services, but he is not. He has appealed the termination of his parental rights, which is a final appealable order under Rule 6-9, and he is seeking review of the court's denial of his request for reunification services along with his appeal of a final order.

DHS also argues that Tovias failed to file a notice of appeal within twenty-one days of the denial of his motion for reunification services. Again, this argument would be applicable if Tovias were bringing an interlocutory appeal of the denial of his motion, but he is appealing a final order terminating his parental rights. The notice of appeal specifically states that Tovias is appealing the permanency-planning order, the termination order, and "all adverse rulings made therein." DHS has not argued that the denial of Tovias's motion for reunification services was not adequately designated in the notice of appeal, and in fact, Tovias attached a multipage checklist to his notice of appeal designating much of the record including the motion and order. Instead, DHS makes the nonsensical argument that Tovias should have filed a notice of appeal within twenty-one days of the entry of an order that they contend was

4

nonfinal and not immediately appealable. We find no merit in DHS's arguments that Tovias has not properly appealed the denial of his motion for additional reunification services.

While DHS neglects to address the merits of the denial of Tovias's motion, we affirm the circuit court's denial of his request for additional reunification services. Tovias's argument on this point is conclusory and cites no authority for his position that cessation of reunification services was not in the children's best interest. Here, the court relied on the caseworker's testimony that she did not know of any services that could be offered at that time to result in successful reunification due to the severity of abuse inflicted on JT2's siblings. While Tovias argues that this demonstrates DHS already had its mind made up, such an argument is unpersuasive because the circuit court was free to accept or reject DHS's assessment of the case. The court denied the motion but stated that it would keep the issue open and reconsider it in the future, indicating that even if DHS "had no intention of ever reunifying" Tovias with his son, as he argues on appeal, the circuit court displayed an open mind on the issue.

Tovias's next two points on appeal are both framed as challenges to the termination of his parental rights. However, in both sections, he raises objections to the court's adjudication of JT2 as dependent-neglected. While DHS fails to make this argument, an adjudication order is immediately appealable pursuant to Rule 6-9. To the extent that Tovias is now attempting to directly challenge the court's adjudication finding, he is barred from doing so. In *Ashcroft v. Arkansas Department of Human Services*, we stated that "we have held that a parent's failure to appeal the rulings made in an adjudication order precludes appellate review of those findings in an appeal from a subsequent order." 2010 Ark. App. 244, at 8, 374 S.W.3d 743, 747 (citing *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005)).

Tovias also makes several challenges to the court's aggravated-circumstances finding, which all raise essentially the same argument for reversal: that it was impermissible for the circuit court to rely on findings from *Tovias I* because this court reversed and remanded the termination of his parental rights in *Tovias I*, and there was insufficient independent evidence in the present case to support the aggravated-circumstances finding. This argument fails for two reasons. First, we did not reverse *Tovias I* due to lack of sufficiency of the evidence to support the court's aggravated-circumstances finding. Instead, we reversed because Tovias had not been established to be JT1's father. *Tovias*, 2019 Ark. App. 228, at 10, 575 S.W.3d at 626. Second, and even more important, in this case the court based its termination order on a second petition in which DHS specifically and expressly pleaded aggravated circumstances as to JT2.

Pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)(A)* & *(B)* (Supp. 2019), "aggravated circumstances" means, among other things, that a determination has been made by the circuit court that there is little likelihood that services to the family will result in successful reunification. *McLemore v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 57, at 9, 540 S.W.3d 730, 735. Here, Tovias challenges that finding and asks us to reweigh the evidence in order to give more weight to his successful completion of the case plan. That evidence was before the circuit court, but the court was swayed by the fact that Tovias continued to attempt to deceive the court regarding his ongoing relationship with Melissa. The court found that Tovias was "willing to lie and cover for the mother, which tends to show that he prioritizes his relationship with her over the well-being of" JT2.

It is well settled that we will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court. *Blasingame v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 71, at 6, 542 S.W.3d 873, 877. Given Melissa's severe violence toward her children in the past, the court's specific finding in this case that Tovias "was at fault for the abuse on the siblings" due to his failure to protect, and the evidence that Tovias continued to allow Melissa to live with him even when he knew that doing so would jeopardize his parental rights to JT2, the circuit court's aggravated-circumstances finding was not clearly erroneous.

Affirmed.

HARRISON and SWITZER, JJ., agree.

*Elizabeth Finocchi*, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.