Cite as 2020 Ark. App. 95

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-740

| | |
|---|---|
| CASSIDY JACKSON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered:** February 12, 2020<br><br>APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44JV-18-22]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Cassidy Jackson appeals the Madison County Circuit Court order terminating her parental rights to her daughter, A.J. (born on 5/23/16). On appeal, Jackson argues that the circuit court erred by finding that (1) it was in A.J.'s best interest to terminate her parental rights and (2) the evidence supported a statutory ground for termination. We affirm.

On January 2, 2018, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of A.J. In the affidavit attached to the petition, DHS alleged that the Springdale Police Department had searched Cassidy's home and found marijuana, syringes, and a bag of methamphetamine residue. The police executed the search to check on a parolee who had been staying in the home for three weeks. On the same day the petition was filed, the court granted an ex parte order for emergency custody.

On January 3, the court found probable cause for the emergency custody. The court placed A.J. in the home of her maternal great-grandmother, Shirley Jackson, and Cassidy was permitted to visit A.J. there.

On February 8, the court adjudicated A.J. dependent-neglected based on neglect and parental unfitness. The court ordered Cassidy to cooperate with DHS, participate in counseling, refrain from using alcohol and illegal drugs, submit to a drug-and-alcohol assessment, follow the recommendations of the drug-and-alcohol assessment, submit to random drug screens, maintain stable housing, demonstrate an ability to keep A.J. safe, resolve any criminal charges, comply with the case plan, and refrain from having any contact with anyone who poses a risk to A.J.

On April 11, DHS and the attorney ad litem filed a motion requesting an emergency hearing and a modification of Cassidy's visits. In the motion, they alleged that Cassidy had consistently tested positive for methamphetamine and amphetamine and had appeared under the influence of the substances. They also alleged that on some occasions, Cassidy had tested positive for opiates, oxycodone, buprenorphine, and THC. Following a hearing, the court entered an order on April 13 granting the motion and ordering Cassidy to complete a residential treatment program.

On June 19, the court entered a review order. The court noted that A.J. remained in Shirley's home and that the placement was in her best interest. The court found that Cassidy had completed her residential treatment program, maintained an apartment, obtained employment, and attended a support group. The court stated that Cassidy had "made much progress" toward correcting the cause of A.J.'s removal.

On September 25, the court entered an order permitting DHS to change A.J.'s placement. The court noted that Shirley had experienced "significant health issues" and that A.J. could be placed in the home of other relatives, Jeremy and Kaye Johnson. The court further noted that the new placement would allow A.J. to have frequent contact with Shirley with whom she had a "significant bond."

On December 20, the court entered a permanency-planning order. The court changed the goal of the case to adoption and termination of Cassidy's parental rights. The court noted that Cassidy had maintained an apartment and employment; however, the court stated that she had relapsed and canceled her last three counseling appointments. Specifically, the court noted that Cassidy had tested positive for opiates and oxycodone on September 20, 2018.

On January 29, 2019, DHS filed a petition for termination of Cassidy's parental rights. DHS alleged the failure-to-remedy[1] and aggravated-circumstances[2] grounds. The court held a two-day termination hearing on March 29 and May 29.

Kimberly Bond testified that she had been Cassidy's counselor since August 2018 and that she had seen a "big difference" in Cassidy. She stated that Cassidy had accepted full responsibility for her mistakes and that she is committed to her recovery. She noted that Cassidy had been diagnosed with major-depressive, alcohol-use, opioid-use, and amphetamine-type-substance-use disorders.

Kaye Johnson, A.J.'s foster mother, testified that her husband is A.J.'s third cousin. She stated that A.J. is in daycare and that she loves it. She further testified that she is

[1]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2019).

[2]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a).

3

extremely smart and that she is doing wonderfully. She stated that if Cassidy's parental rights are terminated, her family is willing to adopt A.J.

Whitney Widner, the DHS caseworker, testified that A.J. first entered foster care on October 8, 2016, when Cassidy left the child in her boyfriend's care and the boyfriend was arrested for a driving-while-intoxicated car accident. A.J. was four and half months old at the time. Widner explained that when Cassidy tried to pick up A.J., she tested positive for benzodiazepine, for which she did not have a prescription, and she admitted using THC. She stated that Cassidy also had a problem with alcohol. She testified that A.J. was returned to Cassidy's custody on June 26, 2017, and that the protective-services case was closed on November 7, 2017. She pointed out, however, that A.J. returned to foster care in the instant case on December 30, 2017.

Widner further testified that Cassidy had only partially complied with the case plan and court orders since October 2018. She stated that Cassidy had missed visitations on January 22 and February 25, 2019, had failed to submit to drug screens, and had tested positive for alcohol on February 11, February 27, and May 27, 2019. She noted that she had informed Cassidy that she could contest any positive screening, but Cassidy had not done so. Widner further explained that Cassidy had tested negative for all substances on a couple of drug screens even though she had been prescribed medications for which she should have tested positive. She believed that the negative drug screens demonstrated that Cassidy had not been taking her prescriptions correctly.

Widner did not believe that A.J. could be placed with Cassidy at that time because of her continued substance-abuse issues. She referenced A.J.'s previous stint in foster care and testified that DHS had provided Cassidy with similar services but that Cassidy

4

continued to have substance-abuse issues. She noted that A.J. is three years old and that she had been in DHS custody for twenty-three months. She believed A.J. would be adopted and noted that she is in a provisional foster home. DHS introduced A.J.'s hair-follicle screen from January 18, 2018, which showed that she tested positive for methamphetamine and amphetamine.

Cassidy testified that she had lived in the same apartment since March 2018 and that she had worked at Golden Corral since May 2018. She acknowledged missing visitations with A.J. on two occasions but stated that she had misunderstood the date. She testified that she has been sober for eight months. She denied consuming alcohol in February or May 2019. She explained that on one occasion, she had taken cough medicine, and she believed that the medicine caused her positive screen. She stated that she has a prescription for Suboxone and that she takes the drug as prescribed. She further testified that she regularly attends alcoholics-anonymous and narcotics-anonymous meetings. She stated that she has criminal fines totaling $2,200 in three different counties.

On June 5, 2019, the court entered an order terminating Cassidy's parental rights. The court found that both grounds pled in the petition supported termination. The court further found it was in A.J.'s best interest to terminate Cassidy's rights. Specifically, the court found that A.J. is adoptable and that her foster parents wished to adopt her. The court also found that the potential harm to A.J.'s health and safety would be too great if she were returned to Cassidy's custody. This appeal followed.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof

of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the child will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(B), (A). Each step requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.* Our review is de novo. *Dunbar v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 472, 503 S.W.3d 821. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norton v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 285. In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. 356.

On appeal, Cassidy first argues that the circuit court erred in finding that termination was in A.J.'s best interest. She does not challenge the court's adoptability finding. Instead, she argues that the evidence is insufficient to show that she posed a risk of harm to A.J. She asserts that the evidence establishes that she maintained her sobriety for eight months prior to the termination hearing and that she was ready for A.J. to return to her care. She further points out that A.J. was placed with relatives and argues that termination of her rights would not achieve greater permanency for A.J.

We hold that the circuit court did not err in finding that it was in A.J.'s best interest to terminate Cassidy's parental rights. The evidence did not show that Cassidy was

sober for eight months prior to the termination hearing. The termination hearing occurred on March 29 and May 29, 2019, and Cassidy tested positive for alcohol on February 11, February 27, and May 27, 2019. Most significantly, the May 2019 screening occurred in the interim between the two-day hearing. Even though Cassidy continues to deny consuming alcohol, we defer to the circuit court for credibility determinations. Further, at the time of the termination hearing, A.J. had already been in foster care for twenty-three months of her three-year life resulting from two dependency–neglect cases based on Cassidy's substance-abuse issues, and Cassidy had relapsed on multiple occasions. We have held that evidence of overtures toward compliance with the case plan when termination is looming is an insufficient reason not to terminate parental rights. *Bean v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 77, 513 S.W.3d 859. Further, as to Cassidy's argument concerning relative placement, the record shows that A.J. was in a foster-care placement with relatives and had not been permanently placed with them. We have also stated that drug-related issues can support a court's finding of potential harm, even when a child is placed with a relative. *White v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 529, 530 S.W.3d 402. Accordingly, we hold that the circuit court's potential-harm analysis was not clearly erroneous.

Cassidy also argues that the circuit court erred in finding that a statutory ground supported termination. She again argues that the evidence shows that she remedied the cause of A.J.'s removal and that she was ready for A.J. to return to her custody.

Proof of only one statutory ground is sufficient to support the termination of parental rights. *Bonner v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 142, 544 S.W.3d 90. We address only the aggravated-circumstances ground found in Arkansas Code Annotated

7

§ 9-27-341(b)(3)(B)(ix)*(a)*, meaning in this case that there was little likelihood that further services would result in successful reunification.

Here, the evidence that supports the court's best-interest finding also supports the aggravated-circumstances ground. This is the second occasion in which A.J. was taken into DHS custody as a result of Cassidy's drug use. DHS offered Cassidy services in the first case, and A.J. was returned to Cassidy's custody. Less than a year later, DHS filed a petition for emergency custody of A.J. in this case when illegal drugs were found in Cassidy's home. Cassidy relapsed during the pendency of this case, and she tested positive for alcohol between the two-day termination hearing. Given this evidence, there is no clear error in the circuit court's finding that there was little likelihood that services to Cassidy would result in a successful reunification. We therefore affirm the termination of Cassidy's parental rights.

Affirmed.

GRUBER, C.J., and MURPHY, J., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.