Cite as 2022 Ark. App. 192

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-21-574

| | |
|---|---|
| PORCHIA CALLOWAY<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered May 4, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION<br>[NO. 60JV-20-415]<br><br><br>HONORABLE TJUANA C. BYRD, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Porchia Calloway appeals the Pulaski County Circuit Court's decision terminating her parental rights to MC (04/21/16). We affirm.

On May 8, 2020, the Arkansas Department of Human Services (Department) filed a petition for ex parte emergency custody and dependency-neglect alleging that on May 5, the Little Rock Police Department (LRPD) asked for assistance with Calloway and MC. The officer stated that Calloway seemed to be on narcotics and had threatened the dispatcher. Calloway had called the LRPD several times reporting that someone was threatening her, the neighbors had cut off her power, and someone had harmed her child. Department investigator Mary Hawkins went to the home and found Calloway on the porch smoking marijuana, for which she had a prescription. Calloway stated that she smokes PCP every day

though the last time she had smoked was three days ago. She explained that MC, who had just arrived home, had not been home while she was using drugs and generally stayed with his grandmother during those times. Calloway tested positive for THC, methamphetamine, amphetamines, and cocaine. She denied using cocaine and methamphetamine but stated that she had taken ecstasy a few days earlier, and she was self medicating. MC told the investigator that his mother called the police, and she told him that they would "fix this." Another family service worker familiar with Calloway's history with the Department stated that Calloway had not been compliant with case plans in the past, which concerned her. The Department took emergency custody of MC due to Calloway's previous history with the Department and her current substance abuse that affected her ability to supervise, protect, and care for him.[1] MC was placed with a relative.

On May 18, the court entered the probable-cause order and found that Calloway believed she did not have a drinking or drug problem, but she was willing to take parenting classes. The court ordered four hours of Zoom visitation a week as well drug screens, drug-and-alcohol assessment, counseling assessment, psychological evaluation, and parenting classes. Calloway was ordered to obtain stable housing, employment, and income and stay in contact with the Department. The Department was ordered to make the necessary referrals within ten days, hold a staffing within thirty days, DNA test the fathers, and obtain

[1]Since 2011, Calloway and previous children who are not parties to this case were involved with the Department due in part to Calloway's abandonment, neglect, and drug use. Several findings of "client failed to cooperate" were made over the years, and at the time of MC's removal, she did not have custody of any of her children.

MC's birth certificate. The court determined that Calloway, who was represented by court-appointed counsel at the hearing, did not qualify for court-appointed counsel and advised her to hire an attorney.

On July 6, the court entered the order adjudicating MC dependent-neglected based on parental unfitness, abuse, and neglect. Specifically, the court found that MC's hair-follicle-test results showed that Calloway had exposed him to marijuana. Parenting classes had begun, and Calloway participated until she "turned in an assignment and . . . stated that she was no longer participating in parenting classes." Calloway had not been randomly drug screened as ordered since the probable-cause hearing. The court noted caseworker Lakisha Tatum's testimony that the Department referred Calloway's hair-follicle test on June 3 and was waiting for approval. The court found that visitation had not begun, and the previously assigned caseworker "made arrangements about visitation before she left, but [she] did not relate any information." MC's intake visit at Recover Centers of Arkansas had taken place, but his psychological evaluation had not, and the Department was ordered to schedule an assessment for a therapeutic foster-care home. Calloway was removed from the adjudication hearing due to her disruptive outbursts and behavior, and the court found that "[t]he behavior Mother displayed today is what [the Department] staff runs into when they interact with Mother." The Department was ordered to refer the hair-follicle test for Calloway within five days and arrange visitation.

The court entered the review order on October 28 setting forth the following findings. The Department had made referrals for a drug-and-alcohol assessment, a

3

psychological evaluation, parenting classes, and hair-follicle drug testing. The psychological evaluation had to be redone because it centered on Calloway's older child, DW, and not MC. Because of this error, the parenting classes had been geared toward older children. Calloway did not report her felonies and legal history during the second psychological evaluation, and the correct services were not offered because of her omission. Calloway was on probation at the time of the hearing and had pending felony charges. The drug-and-alcohol assessment did not mention her methamphetamine and PCP use. Calloway's urine drug screen was negative for all substances, though her hair-follicle test was positive for cocaine. Calloway stated that she had not used cocaine or PCP since May, and she denied having a drug habit. She felt that the Department was forcing her into drug treatment, though she stated she would go if ordered to. Calloway denied having any mental-health issues and believed that the psychological assessment was a waste of time. Calloway had missed nine out of eighteen scheduled visitations, which she ascribed to technical issues and work schedules. Calloway had not been informed of a true finding that her ex-boyfriend, Asher Satterfield, sexually abused MC; however, Calloway did not believe the sexual abuse occurred, even after the true finding was disclosed to her. The Department had "BARELY" made reasonable efforts to prevent removal and had mistakenly geared the services toward the older child. Calloway had worked those services and would have to work the services a second time because of the Department's error. Because Calloway lied about her legal issues and drug use, MC could not safely be returned to her. The goal of the case was reunification with a concurrent goal of permanent custody or guardianship with a fit and willing relative.

On May 7, 2021, after a hearing, the circuit court entered the permanency-planning order changing the goal of the case to adoption. The Department filed a petition to terminate Calloway's parental rights the same day. The petition alleged that termination was appropriate under three statutory grounds: "failure to remedy" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*; "subsequent factors" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*; and "aggravated circumstances" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)* (Supp. 2021). The Department also alleged that MC was healthy and considered adoptable and that his health and safety were at risk if returned to his mother. Specifically, the Department contended that she was unfit, had not demonstrated the ability to care for MC, and had not benefited from the services provided.

On July 8, a hearing was held on the termination petition, and the relevant testimony is summarized here. Jennifer Balch, Calloway's therapist, testified that in the three sessions since Calloway's second psychological assessment in March, she focused on anger management and not drug-related issues. Andrew Beavers, who performed both of Calloway's drug-and-alcohol assessments, diagnosed her with alcohol-use disorder and cannabis-use disorder, and he opined that even though Calloway did not disclose in either assessment that she tested positive for THC, methamphetamine, amphetamines, and cocaine, or that her son tested positive for THC, he recommended group meetings and individual therapy rather than rehabilitation because she had already been through rehabilitation in 2019 and 2020. Calloway testified that she was no longer in a relationship

5

with Satterfield and did not believe her son would be safe around Satterfield because he had "personal issues." She explained that she did not believe that Satterfield had sexually abused MC, even after the true finding of sexual abuse was disclosed to her. Calloway testified that she had used methamphetamine, cocaine, and PCP over the three years before MC was removed from her custody, and marijuana for about eighteen years. Calloway explained that the Department failed to timely schedule the second drug-and-alcohol assessment after the October 2020 hearing, and she did not complete the second assessment until June 30, 2021. The assessment results were not given to her, and she was not aware of the recommendations therein; however, she stated that she would comply with any recommendation. Calloway testified that her plan to stay sober was to refrain from drug use and that she did not need to go to meetings. Calloway explained that until 2021, she was "big headed" and did not think she needed counseling, but since then, she had arranged counseling herself and rejected the Department's referral for counseling because she was already in therapy. Calloway explained that she had recently begun taking her mental-health related medication—one medication on a daily basis and the rest "as needed." Calloway stated that she was "too forward" and "too emotional" and had lashed out at the Department and threatened to take MC, though she apologized later. She explained that during one visitation she told MC he was coming home with her because "[she] felt like he would be returned home to [her] today," and she was "living on faith." Calloway attributed her missed visitations to work and losing track of time. Calloway described herself as a loving and overprotective mother who spoiled her children, although none of her other children lived

with her. She testified that she made mistakes and had done things in front of the children that she should not have; however, Calloway also stated that she did not need to be told how to raise her children. DeUngela Fields, the caseworker, testified that the Department had some responsibility for the delays in the case. She explained that she did not give Calloway's second drug-and-alcohol assessment to her, and that the assessment included recommendations for outpatient treatment and nine telemedicine sessions. Fields stated that she did not know why Calloway did not start counseling until recently and that she made the referral in April, after the March assessment. Fields testified that the Department had concerns about Calloway's mental health due to her angry outbursts and her cursing and yelling during phone conversations as recently as the day before the hearing. Fields stated that Calloway was on probation for fighting. Throughout the case, Fields explained, the Department had to "tiptoe" around Calloway "because you don't know what will set her off" and that "it was not safe for the Department to go to her home to do drug tests." Fields stated that the Department had requested a police escort for home visits at times but had not done so to administer drug tests. Fields recalled that the Department had asked Calloway to come to the office for drug screening in July, but Calloway never showed. Rickitha Hicks testified that Calloway had missed around fifteen visits since the case was opened, and that since the April hearing, the visitations had gone better. Before then, Calloway did not always abide by the Department guidelines, and one time a visitation had to end early due to her disruptive behavior.

Following the hearing, the court entered the order terminating Calloway's parental rights. In the termination order, the court found that the following evidence and testimony supported the statutory grounds for termination. MC went into Department care on March 5, 2020, due to parental drug use and was found to be dependent-neglected due to parental unfitness, abuse, and neglect. While in his mother's care, MC was exposed to marijuana and tested positive for THC. Throughout the case, Calloway was disruptive and had to be removed from hearings or muted on Zoom meetings due to her behavior. Calloway was not truthful during her psychological evaluation or drug-and-alcohol assessments and repeatedly stated that she does not need drug treatment. Calloway did not make significant, measurable progress in the case plan, and the court was unable to determine whether she was sober or not in part because the Department was afraid of what Calloway would do if they went to her home to drug test her. The court found that the Department's failure to drug test her on this basis was not a legitimate excuse. The court found that Calloway had threatened Department employees assigned to her case and that she had been arrested for battery in March 2020. Calloway had not engaged in counseling and did not feel she needed counseling, though she acknowledged her mental-health issues and believed she needed anger-management counseling. The court found that Calloway had only recently begun taking her medication; however, she only partially took her medication as prescribed. Visitation with MC had never progressed to in-person visitation because Calloway was "disruptive and aggressive," and the court found that her behavior was potentially harmful to MC, not because she threatened him, but because she is likely to expose him to another

removal or trauma based on her behavior. The court found that MC had stated that Satterfield sexually abused him, and a true finding of sexual abuse was made, but Calloway does not believe her son. Though she is no longer in a relationship with Satterfield, it is not because he sexually abused MC. The court found that MC is adoptable and that he would be subjected to potential harm if returned to Calloway due to her outbursts, aggression, further drug exposure, and failure to acknowledge sexual abuse. Additionally, the court found that Calloway does not have custody of any of her other children. Calloway timely filed her notice of appeal.

II. *Discussion*

A. Standard of Review

The standard of review in appeals of termination of parental rights is de novo, but we reverse a circuit court's decision to terminate parental rights only when it is clearly erroneous. *Guardado v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 16, 568 S.W.3d 296. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Hopkins v. Ark. Dep't of Hum. Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002).

B. Points on Appeal

1. *Statutory grounds*

Calloway challenges the sufficiency of the evidence supporting the court's findings that the Department adequately proved the three independent statutory grounds for termination. We have repeatedly held that the Department need only prove one ground for

9

termination, so we must affirm if the evidence supports at least one of the statutory grounds at issue in this case. *Martin v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 521, at 11, 504 S.W.3d 628, 635.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)* establishes a statutory ground for the termination of parental rights when "[a] determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*. Calloway contests the court's finding that there is little likelihood that additional family services would result in successful reunification, because the evidence shows that she "worked throughout this case to reunify with her son." This argument has no merit

Specifically, Calloway argues that

she was drug free, completed parenting classes, participated in two psychological evaluations, completed two drug and alcohol assessments, was taking her medication, had a home, was employed, was participating in counseling and was willing to do whatever was recommended by the drug assessment.

Calloway's characterization of the situation ignores her contribution to the problems in the case. She asserts that she was drug free, but she had refused to drug test very close to the termination hearing. Calloway contends that she completed parenting classes; however, she did not gain the skills needed to protect and parent her child. Calloway completed two drug-and-alcohol assessments, but she was dishonest during both. Though Calloway was participating in counseling, it was only because she decided to do so eleven months into the case. Calloway stated that she was "willing to do whatever was recommended," but her

dishonesty about her drug use skewed the recommendations and required a second assessment, which delayed her ability to make progress in the case plan. Calloway's behavior stymied her ability to work the case plan. In summary, Calloway's argument is a request to reweigh the evidence, which this court will not do. *See Phillips v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 169, 596 S.W.3d 91.

Additionally, Calloway contends that the Department failed to offer drug screens, convey the results of the second drug-and-alcohol assessment, and monitor her progress in counseling. Essentially, Calloway argues that the Department failed to offer meaningful services. A finding of aggravated circumstances does not require the Department to prove that meaningful services toward reunification were provided; thus, her argument has no merit. *See Draper v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58. Because the Department need only prove one statutory ground supporting termination of parental rights, we affirm the circuit court's finding that termination was supported by sufficient evidence on the aggravated-circumstances ground.

## 2. *Best interest*

Calloway also challenges the court's finding that termination was in MC's best interest, contending that the court erred in basing the potential-harm finding on her drug use, aggressive behavior, and "failure to acknowledge the true finding for sexual assault." Calloway additionally argues that the court erred by relying on the fact that she did not have custody of her four other children because the record is devoid as to why she does not have

11

custody of those children. The crux of her argument is that the court speculated that her children were no longer with her because of her unfitness. Her arguments fail.

In addition to finding a statutory ground for termination, an order terminating parental rights must also be based on clear and convincing evidence that the termination is in the child's best interest. *Smith v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 380, at 6, 555 S.W.3d 896, 900. When making a best-interest determination, the circuit court must consider the likelihood the child will be adopted and the potential harm the child would face if returned to the parents. *Id.* Potential harm must be viewed in a forward-looking manner and considered in broad terms. *Id.* It is the overall evidence—not proof of each factor—that must demonstrate termination is in the children's best interest. *Hickman v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 457, 636 S.W.3d 815.[2]

Specifically, the court relied on evidence and testimony that Calloway was unable to control her anger as recently as the day before the termination hearing, and her anger issues had resulted in her arrest. The court found that further aggressive behavior would be traumatic for MC to witness and, if Calloway was arrested again, would leave MC without family to care for him. Also, the court heavily weighed Calloway's refusal to believe MC and accept the sexual abuse finding against her ex-boyfriend. The court found that Calloway had only recently begun counseling, and she denied that she had a drug problem or needed treatment, despite her years of drug abuse. Even excluding Calloway's previous involvement

---

[2]Calloway's best-interest argument does not challenge the court's adoptability finding.

with the Department, the Department demonstrated the potential harm in returning MC to Calloway's custody. The circuit court's finding that Calloway presented a risk of harm to MC's health and safety is supported by clear and convincing evidence. We affirm.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.