Cite as 2023 Ark. App. 451

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-23-246

|  |  |
|---|---|
| STORMY RICHARDSON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered October 18, 2023<br><br>APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64JV-20-25]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Stormy Richardson ("Richardson") appeals the Scott County Circuit Court's order terminating her parental rights to her children, Minor Child 1 (MC1, born in August 2020) and Minor Child 2 (MC2, born in November 2021). On appeal, Richardson argues that the circuit court erred by finding that any statutory ground pled supported termination or that termination was in the children's best interest. We affirm.

On December 28, 2020, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect after it had placed a hold on MC1, who was then four months old. DHS had received a report on December 20 that

MC1 was found alone in her car seat outside an apartment at 4:00 a.m. and that her parents[1] were not located until 11:00 a.m., when they were found in a highly intoxicated state. The temperature that night was in the thirties. The petition alleged that this was the third time the child had been located alone and that a needle was found in a diaper bag near the child. The petition also referenced three prior "unsubstantiated" DHS allegations, one being a November 2020 referral in which Richardson "was reported to have seizures approximately six to seven times a day." The petition went on to state that "[a]lthough the abuse was unsubstantiated, due to the concerns of the child being left alone with Stormy and due to Stormy's seizures being at six to seven times a day, a Protection Plan was put in place." The circuit court entered an ex parte order placing MC1 in DHS's legal custody on December 28. The order further stated that the parents were found following the December 20 incident "after having attempted to hide the child from the Department, because they said, the baby had been raped."

On January 5, 2021, the court found that probable cause existed such that MC1 should remain in the custody of DHS. The court entered the probable-cause order on January 26 and an amended order on February 9. The order specified that Richardson was to have visitation once a week for at least four hours and mandated that she receive services to include parenting classes, a psychological evaluation, and random drug screens.

---

[1]The proceedings also sought to terminate the parental rights of the putative father, Zackery Richardson. The parties were divorced, and Zackery consented to the termination of his parental rights in December 2022. He is not a party to this appeal.

2

An adjudication hearing was held on March 9, followed by an order entered May 17. The court found MC1 dependent-neglected as the result of environmental neglect. The order stated that, "[s]pecifically, the Court finds that the home has been inappropriate, especially with the people that are in and out of the home, and the people staying in their bed. The Court finds the testimony of the DHS investigator credible."

MC1 remained in the custody of DHS, and the goal of the case was set as reunification. Visitation was as previously ordered, with DHS having the discretion to increase visitation up to and including a trial home placement with the agreement of the parties. Richardson was ordered to comply with the case plan; obtain and maintain safe, stable, and appropriate housing, income, and transportation; submit to random drug screens, hair-follicle tests, and alcohol swabs; complete a psychological evaluation and comply with its recommendations; complete parenting classes and demonstrate the skills learned at visitations; keep DHS aware of her contact information and notify DHS if there were any changes; keep DHS aware of any significant life events; and attend visitation as scheduled.

The court held review hearings on June 8, with an order entered June 16; and September 28, with an order entered December 10. MC1 remained in DHS custody, and the goal of the case continued to be reunification. The court found that Richardson was "demonstrat[ing] some progress towards the goal of the case plan" in the June order.

A permanency-planning hearing was held on December 14, with an order entered on January 13, 2022. MC1 remained in DHS custody, and the goal of the case continued to be reunification. Richardson was found to be in partial compliance at that time because she

was without income and at risk of losing her housing. The January 13 order also found that Richardson had given birth to MC1's sibling, MC2; and the court ordered a seventy-two-hour hold be placed on MC2, who was placed in the custody of DHS at that time.

On December 17, 2021, DHS filed a petition for emergency custody and dependency-neglect with respect to MC2. The petition included an affidavit from a DHS family services employee who stated that "due to the severity and frequency of the mother's seizures [said to occur six or seven times a day], that if the child is left alone with the mother, there is a risk the child could be harmed." The court entered an ex parte order granting the petition on the same day. The order stated that with regard to Richardson, she had "no current income, and [was] at a risk of losing her current housing. . . . [She] also has frequent and severe seizures that pose a significant risk to the juvenile's health and safety." A probable-cause hearing was held on December 20, with an order entered on January 7, 2022. The court found that probable cause existed and continued to exist such that MC2 would remain in the custody of DHS.

The court entered a permanency-planning order on January 13, 2022, in which it again stated the goal of the case as reunification and found the parents to be in partial compliance with the case plan and orders of the court. With regard to Richardson, the court noted that she did not "have income at this time, though she testified she may receive SSI after one month. She is at risk of losing her current housing."

On February 22, the court held a fifteen-month review hearing with regard to MC1 and an adjudication hearing with regard to MC2. The court entered a resulting order on

March 10. Both children were found to be dependent-neglected because the parents were "unfit for custody." Both children remained in the custody of DHS, and the court found that it was in the best interest of the juveniles for the goal to remain reunification.

Another permanency-planning hearing was held on June 28 with a resulting order entered July 14. The children again remained in DHS custody with a continuing goal of reunification. The order stated:

> The Department has not made reasonable efforts to finalize a permanency plan for the juveniles. Specifically, we are approximately 19 months into the case and are not making any progress. The parent, Zackery Richardson, has no water in the house he lives in, and does not appear to have any plan to get water soon. Neither parent has an appropriate home at this time, and the Court could not return the juveniles to either parent under the circumstances today. The direction in the case has pivoted and we are no closer to a resolution to permanency than previously. If the case were to go in the direction of permanency with placement with the grandmother, Zackery Richardson's mother, there would need to be a specific, appropriate, visitation plan in place for the parent, Stormy Richardson.

The order further stated that "[j]urisdiction of this case is continued with a permanency planning hearing set for October 25, 2022." The third permanency-planning hearing was held on the set day, and the court's findings were memorialized in an order entered December 6. The order stated:

> After considering the evidence, the available permanency planning dispositions, and the juveniles' best interest, health, safety, and welfare, the Court finds that the goal of the case shall be changed to adoption following termination of parental rights. The parents have both testified they do not want guardianship for the juveniles in this case. . . . The juveniles shall remain in the custody of the Department because the parents are unfit, and the juveniles' health and safety cannot be protected by the parents if returned to the parents. Return to the custody of the parent is contrary to the welfare of the juveniles and the continuation of custody in the Department is in the best

interests of the juveniles, necessary to the protection of the juveniles' health and safety, and the least restrictive alternative.

The order went on to rescind the "no reasonable effort finding from June 28, 2022" as it related to DHS.

With regard to Richardson, the order specifically stated, "The parent, Stormy Richardson, has complied with the services. However, she is still not in a position to have the children returned to her. The record is replete with issues regarding visitation and the use of alarms. The juveniles could not be returned to her at this time."

DHS filed a termination-of-parental-rights petition on November 1. The petition sought to terminate the parental rights of both parents as to both juveniles. The petition pled failure to remedy, failure to provide significant material support and maintain meaningful contact, subsequent factors, and aggravated circumstances. Zackery Richardson consented to the termination of his parental rights in December 2022.

The termination hearing for Stormy Richardson was held on January 10, 2023. Following the presentation of DHS's case, Richardson moved for a directed verdict—which the court granted—on the ground of failure to provide significant material support and maintain contact. Richardson then presented her case. The court granted the termination petition on the grounds of failure to remedy, subsequent factors, and aggravated circumstances. The court further held that termination was in the best interest of the juveniles based on its findings that the juveniles are adoptable and that they would likely be subjected to potential harm if parental rights were not terminated. This appeal followed.

6

Termination-of-parental-rights cases are given de novo review. *E.g.*, *L.W. v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 44, at 8, 380 S.W.3d 489, 494. Appellate courts will not reverse a termination order unless the findings were clearly erroneous, meaning "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* at 9, 380 S.W.3d at 495. Further, appellate courts give due regard to the circuit court's ability to assess a witness's credibility. *Id.*, 380 S.W.3d at 494.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that at least one ground for termination exists and that termination is in the juvenile's best interest. *Id.* at 9–10, 380 S.W.3d at 494–95. "Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established." *Watkins v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 55, at 4. Because DHS is required to prove only one ground for termination, an appellate court need not consider whether each of the statutory grounds cited for termination was independently appropriate. *See Martin v. Ark. Dep't of Hum. Servs.*, 2017 Ark. 115, 515 S.W.3d 599; *see also Calloway v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 192, at 10, 644 S.W.3d 262, 267 ("We have repeatedly held that the Department need only prove one ground for termination, so we must affirm if the evidence supports at least one of the statutory grounds at issue in this case."). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Causer v. Ark. Dep't of Hum. Servs.*, 93 Ark.

7

App. 483, 220 S.W.3d 270 (2005). Nevertheless, courts are not to enforce parental rights to the detriment of a child's health and well-being. *Id.*

For her first argument on appeal, Richardson argues that DHS failed to prove any of the statutory grounds pled in the termination petition. The court granted Richardson's motion for directed verdict on the ground of failure to provide significant material support and maintain meaningful contact, leaving the grounds of failure to remedy, subsequent factors, and aggravated circumstances. It was necessary, therefore, for the court to find that only one of the remaining three statutory grounds existed in order to properly terminate Richardson's parental rights.

Aggravated circumstances exist when a determination has been made by a court that there is little likelihood that additional services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)* (Supp. 2023); *see also Calloway*, 2022 Ark. App. 192, at 10, 644 S.W.3d at 267. This court has held that a parent's failure to demonstrate "sufficient parenting skills to regain custody of the children or to be trusted with a trial placement or unsupervised visitation" supports an aggravated-circumstances finding. *Jones v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 299, at 8, 578 S.W.3d 312, 318 (holding that termination was appropriate where evidence "establishe[d] that DHS offered services to Jones for almost a year and a half, and despite these services, Jones did not demonstrate that she could consistently provide a stable, safe, and appropriate environment for the children. A stable home is one of a child's most basic needs."). This court has likewise held that a finding of aggravated circumstances—though it requires more than a mere

8

prediction or expectation that services will not result in successful reunification—may be appropriate where doubts persist about a parent's ability to be trusted with unsupervised visitation and care of a child regardless of the parent's compliance with a case plan and court orders. *See Helms v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 158, 662 S.W.285. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. The provision of meaningful services by DHS is not required for an aggravated-circumstances finding. *See Love v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 377, at 7, 653 S.W.3d 539, 544.

In support of her argument that the aggravated-circumstances ground was not proved by clear and convincing evidence, Richardson primarily relies on her compliance with the case plan and court orders. Richardson states, "The overarching concern expressed by the court as to each of these grounds" was "parenting issues," and she disputes specific testimony that she alleges was in support of those concerns.

Richardson further disputes that she had not shown that she could have unsupervised visits, citing unsupervised visits in November 2021 (when the children's father was also present) as well as the fact that MC2 was in her care without incident for the first month of her life.

In response, DHS and minor children contend that Richardson

demonstrated an incapacity or indifference to rehabilitate her circumstances, and the evidence demonstrated that services were not likely to result in reunification. More specifically, despite the longevity of the juveniles' time in

9

foster care and Richardson's completion of three separate parenting courses, she was unable to graduate to unsupervised visitation, and it was unclear whether this could even be accomplished in the future.

In support of their arguments, DHS and minor children contended that "Richardson is autistic, developmentally behind, diagnosed with a seizure disorder, and requires 24/7 assistance from an aide to help her with basic tasks such as bathing, grooming, dressing, laundry, housekeeping, meal preparation, and shopping." At the termination hearing, however, Richardson denied the need for further assistance from an aide.

At the termination hearing, Melissa Dodson, a program assistant who participates in the supervised visits with Richardson, and McKayla Whitley, the primary DHS caseworker both testified about their concerns that the children could not be left otherwise unsupervised in Richardson's care due to safety concerns. The ad litem, Anna Noakes, further expressed her preference that "termination be granted." Evidence also established that Richardson had declined both a home-health aide and a proposed guardianship arrangement. Additionally, there was testimony that Richardson has frequent seizures, which could be controlled by medication, but that she sometimes had trouble remembering to take her medication without reminders from others. Richardson stated she had not had a seizure in over a year but could not recall whether she had provided medical records to DHS.

We have held repeatedly that the circuit court is in the best position to determine the credibility of the witnesses and make factual determinations. *L.W. v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 44, at 8, 380 S.W.3d 489, 494. The January 19 order contained specific factual findings in support of the court's determination that aggravated circumstances were

10

found due to "little likelihood that services to the family will result in successful reunification." Specifically, the order stated:

> As noted above, this case has been going on over two years. . . . During this hearing, the Court has not heard any testimony that can indicate a deadline for when the juveniles can be returned home safely to the parents. The Court does not find a way to achieve permanency for the juveniles without proceeding towards termination of parental rights. Stormy Richardson has worked services throughout this case, yet she has not progressed enough to be able to have the juveniles returned to her custody at this time. The parents' testimony today regarding her plans if the juveniles were returned to her clearly shows this Court there are still concerns with her ability to properly parent the juveniles. There are no known services identified that can help further the chances of a successful reunification. Under the circumstances, there is clearly a little likelihood that continued services to the parent, Stormy Richardson, will result in a successful reunification.

There was sufficient testimony on which the circuit court could have reasonably concluded that DHS proved aggravated circumstances by clear and convincing evidence. Here, the evidence demonstrated—and the court found—that Richardson had attempted to remedy and correct the issues through participating in services offered by DHS but seemed to lack the capacity to independently exercise appropriate parenting judgment. There is also evidence on which the court could have concluded that Richardson was not willing to rehabilitate the circumstances that prevented the placement of the children in her custody, such as her unwillingness to consent to a guardianship or a home-health aide. Accordingly, we affirm the circuit court's aggravated-circumstances finding. Because only one ground is necessary to support termination, we do not address Richardson's arguments concerning the alternative grounds for termination. *Helm v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 418, 501 S.W.3d 398.

11

Richardson next argues that the circuit court erred in finding that termination was in the juveniles' best interest. In considering the best-interest finding, the circuit court must consider the likelihood that the juvenile will be adopted and the potential harm that could be caused to the juvenile if returned to the parent. *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 7, 585 S.W.3d 725, 729–30. However, unlike statutory termination grounds, potential harm and adoptability are only factors for the circuit court to consider rather than essential elements of proof, and each factor need not be established by clear and convincing evidence. *L.W.*, 2011 Ark. App. 44, at 11, 380 S.W.3d at 496.

Richardson does not challenge the adoptability factor with regard to either child; therefore, this court is not required to address this issue on appeal. *See, e.g., Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 441, at 8, 587 S.W.3d 604, 608. In predicting potential harm, a circuit court is not required to identify actual harm. *See Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, at 12, 555 S.W.3d 915, 921.

In support of her contention that termination was not in the children's best interest, Richardson cites *Benedict v. Arkansas Department of Human Services* for the proposition that "disabilities are not conclusive on the termination issue." 96 Ark. App. 395, 242 S.W.3d 305 (2006). In *Benedict*, this court reversed and remanded termination of a mother's parental rights based on the sole ground preserved on appeal: whether the decision was in the best interest of the children. The court based its holding on the evidence, which revealed that the mother was having a psychotic episode when DHS took the children into custody but had since "made consistent efforts to improve her parenting skills and get to a point where

she can raise her children despite her mental deficiencies." *Id.* at 410, 242 S.W.3d at 317. The court went on to find that Benedict had shown "marked progress in her ability to provide a stable home . . . [,] benefited from the services provided by DHS, and shown objective improvement to the benefit of the children." *Id.* at 412, 242 S.W.3d at 319.

*Benedict* was distinguished by *Fowler v. Arkansas Department of Human Services*, 2021 Ark. App. 307, 634 S.W.3d 535, where this court affirmed a termination of parental rights. In *Fowler*, this court noted that although Fowler cited *Benedict* for the proposition that "it is proper and appropriate to allow additional time and services when parents are striving to be good parents, especially if the parent is hindered because of the parent's intellectual or psychological difficulties," the true holding was that "where appellant has by all accounts cooperated with the orders of the court, *benefited from the services provided by DHS, and shown objective improvement to the benefit of the children*" a reversal was warranted. *Id.* at 14–15 n.2, 634 S.W.3d at 544 n.2 (quoting *Benedict*, 96 Ark. App. at 412, 242 S.W.3d at 319) (emphasis added). This court went on to note the unique factual circumstances in *Benedict*—that appellant suffered from postpartum depression that was eliminated through treatment over the course of the case—which remedied the underlying condition that caused removal. *Id.*

There is no specific indication in the court's order that Richardson's mental health or history of seizures was the basis for the best-interest finding. To the contrary, the order stated:

> the circuit court considered all relevant factors, including the likelihood that
> the juveniles would be adopted if the parental rights were terminated, and the

potential harm, specifically addressing the effect on the health and safety of the juveniles, that could be caused by returning the juveniles to the parents.

However, as discussed above, there was sufficient evidence on which the court could conclude that potential harm would be likely if the children were returned to the unsupervised care of their mother. Unlike the facts in *Benedict*, Richardson unfortunately had not made "marked progress in her ability to provide a stable home . . . [,] benefited from the services provided by DHS, and shown objective improvement to the benefit of the children." *Benedict*, 96 Ark. App. at 412, 242 S.W.3d at 319. Under these facts, it was not clearly erroneous for the court to conclude that Richardson's past behavior and ongoing behavior at supervised sessions demonstrated potential future harm to the children. *See Cox v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 202, at 10, 462 S.W.3d 670, 676 ("This court has held that past behavior is correctly viewed as a predictor of potential harm."). We therefore affirm the circuit court's termination of Richardson's parental rights.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.

14