Cite as 2023 Ark. App. 508

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-23-309

| | |
|---|---|
| WHITNEY BEAVERS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered November 8, 2023<br><br>APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 42PJV-21-34]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Whitney Beavers ("Whitney") appeals the Logan County Circuit Court's order terminating her parental rights to her children, Minor Child 1 (MC1, born in August 2013) and Minor Child 2 (MC2, born in July 2014). On appeal, Whitney argues that the circuit court erred by finding that any statutory ground pled supported termination or that termination was in the children's best interest. We affirm.

The present case began on October 11, 2021, when the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect after it placed a hold on MC1, MC2, and a third child (MC3, born in July 2008), whose custody

is not at issue in this appeal.[1]  The affidavit accompanying the petition outlined a history of abuse allegations dating back to 2016 with each juvenile as an alleged victim and both Whitney and Wayland Beavers (Wayland),[2] the putative father of MC1 and MC2, listed as alleged abusers.  DHS had exercised an emergency hold on the children following a home visit on October 6.

The accompanying affidavit went on to describe that DHS had opened a protective-services case on the family due to a true finding of inadequate supervision on August 11, 2021, when it was reported that then seven-year-old MC2 had gotten out of the home and traveled several miles on her own to the local Dollar General on more than one occasion. In September, a new allegation of sexual abuse was made with MC3 as the alleged victim and Wayland as the alleged abuser.  DHS put a protection plan into place prescribing no contact between Wayland and MC3 and no unsupervised contact with Wayland and his own children, MC1 and MC2.  DHS was contacted on October 5 due to concerns that the protection plan was not being followed and again on October 6 regarding concerns that the children were not at school.

---

[1]MC3 is the child of Whitney and a different man identified in a separate paternity action.  In a December 13, 2022 order following a permanency-planning hearing, the circuit court placed permanent custody of MC3 with her father and dismissed both parties from the case.

[2]Although the circuit court terminated Wayland Beavers's parental rights in the same action, he did not timely appeal the determination and is not a party here.

Following the October 6 home visit, DHS exercised an emergency hold on all three children. The DHS representative described environmental concerns related to the home including messiness, a "strong, foul odor," and a hole in the floor covered by plywood as well as concerns that MC1 had ingested an alcoholic Jell-O shot that he purportedly obtained from Whitney's bedroom closet while she was sleeping. The affidavit stated that the children were removed from Whitney's custody "because circumstances or conditions of Whitney Beavers present an immediate danger to the[ir] health or physical well-being" and observed that the "[c]aretaker has not, cannot, or will not provide supervision necessary to protect children from potentially dangerous harm." On November 30, the court found that probable cause existed such that the children should remain in DHS custody.

All three children were adjudicated dependent-neglected in an order entered January 7, 2022. The court's finding was based on the parents' stipulation "to dependency-neglect based on inadequate supervision and environmental issues." "Specifically," the circuit court went on to state that "the allegations in the petition and accompanying affidavit are substantiated by the proof." The goal of the case was set as reunification with a concurrent goal of adoption.

The court held two review hearings: on March 2, followed by an order of March 10; and on June 15, followed by an order of June 28. At the March hearing, the court found that Whitney had "minimally complied with the case plan and orders of the court. Specifically, the parents need to step up. Both parents appear to have minimal employment." The court ordered a hair-follicle test and psychological evaluation for Whitney. At the June

hearing, the court found that "Whitney Beavers has mostly complied with the case plan and orders of the Court. Specifically, she is working the case plan and cooperating with the Department. However, she does not have any appropriate house at this time."

On November 1, the children's maternal grandmother and her spouse filed a petition to adopt the children. Subsequently, on December 27, the maternal grandparents alternatively sought a guardianship of the children.

Following a continuance, the circuit court held a permanency-planning hearing on November 2, memorialized in an order entered December 13. The court found that

> [t]he parents, Whitney Beavers and Wayland Beavers, progress in this case is going backwards from previous hearings. Specifically, the Court finds we are at 13 months into this case and are not making progress toward reunification. There continues to be a drug issue with Whitney Beavers and Wayland Beavers. Both parents have tested positive for meth, and both parents deny any use of meth or amphetamines. Whitney Beavers has lost her job.
>
> The parent, Whitney Beavers, had made inappropriate statements to the juveniles regarding the return of the juveniles to her custody. The Department has discretion to end visits if the parents are inappropriate.

The court found that the goal of the case should be changed to adoption following termination of parental rights.

On December 1, DHS filed a petition to terminate Whitney's and Wayland's rights to MC1 and MC2. The petition pled failure to remedy, subsequent factors, and aggravated circumstances. The termination hearing was held on January 3, 2023, and in an order entered February 2, the circuit court terminated Whitney's parental rights, citing all three grounds. At the hearing, the court received testimony from Whitney, Wayland, and Hannah

4

Wilkinson (Wilkinson), a family service worker at Logan County Division of Children and Family Services assigned to the Beavers case. Wilkinson testified that Whitney was permitted unsupervised visits at one time but that supervised visits were ordered again after MC1 reported to his counselor that Whitney had fallen asleep on the couch during the visit and the kids were outside playing. Wilkinson also testified that Whitney had missed some recent visits with the children and that, in December, she had not shown for three drug-related counseling sessions and was thirty minutes late to a fourth, which was therefore marked as incomplete. Wilkinson testified that Whitney's March 2022 hair-follicle test came back positive for methamphetamine and a November 29 test came back positive for methamphetamine and amphetamine but that she had three negative tests in December. Wilkinson admitted that Whitney had not been made aware of a DHS drug assessment that recommended she attend counseling, so it would have been hard for Whitney to accept a recommendation for drug counseling when she was not made aware of it.

The court further held that termination was in the best interest of the juveniles on the basis of its findings that the juveniles are adoptable and that they would likely be subjected to potential harm if parental rights were not terminated. This appeal followed.

Termination-of-parental-rights cases are reviewed de novo. *E.g.*, *L.W. v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 44, at 8, 380 S.W.3d 489, 494. Appellate courts will not reverse a termination order unless the findings were clearly erroneous, meaning "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* at 9, 380 S.W.3d at 495. Further,

5

appellate courts give due regard to the circuit court's ability to assess a witness's credibility. *Id.*, 380 S.W.3d at 494.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that at least one ground for termination exists and that termination is in the juvenile's best interest. *Id.* at 9–10, 380 S.W.3d at 494–95. "Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established." *Watkins v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 55, at 4. Because DHS is required to prove only one ground for termination, an appellate court need not consider whether each of the statutory grounds cited for termination was independently appropriate. *See Martin v. Ark. Dep't of Hum. Servs.*, 2017 Ark. 115, 515 S.W.3d 599; *see also Calloway v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 192, at 10, 644 S.W.3d 262, 267 ("We have repeatedly held that the Department need only prove one ground for termination, so we must affirm if the evidence supports at least one of the statutory grounds at issue in this case.").

For her first argument on appeal, Whitney argues that DHS failed to prove any of the statutory grounds pled in the termination petition. The court granted DHS's termination petition on the grounds of failure to remedy, subsequent factors, and aggravated circumstances. In response, DHS and minor children argue that sufficient evidence supported the aggravated-circumstances and subsequent-factors grounds. Because DHS and the minor children do not address the failure-to-remedy ground, we will not address it on

6

appeal.[3]  Moreover, we need only confirm one of these grounds in order to affirm that the circuit court properly terminated Whitney's parental rights.

Aggravated circumstances exist when a determination has been made by a court that there is little likelihood that additional services to the family will result in successful reunification.  Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)* (Supp. 2023); *see also Calloway*, 2022 Ark. App. 192, at 10, 644 S.W.3d at 267.  This court has held that a parent's failure to demonstrate "sufficient parenting skills to regain custody of the children or to be trusted with a trial placement or unsupervised visitation" supports an aggravated-circumstances finding.  *Jones v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 299, at 8, 578 S.W.3d 312, 318.  Continued illegal drug use also supports the termination ground of aggravated circumstances.  *See, e.g.*, *Jackson v. Ark, Dep't of Hum. Servs.*, 2020 Ark. App. 95, at 9, 595 S.W.3d 418, 423 (where parent relapsed and illegal drugs were found in her home during the case, there was "no clear error in the circuit court's finding that there was little likelihood that services . . . would result in a successful reunification").  A finding of aggravated circumstances does not require DHS to prove that meaningful services were provided, nor is there any time-based requirement.  *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 10, 655 S.W.3d 534, 541.

---

[3]Although addressed in the written order, it also appears that the court addressed only the aggravated-circumstances and subsequent-factors grounds in its comments from the bench.

In support of her argument that the aggravated-circumstances ground was not proved by clear and convincing evidence, Whitney argues that the record was not sufficient to support the finding because she did make some progress and had completed all the services requested by DHS. However, this alone is not determinative.

Whitney relies on the *Yarborough v. Arkansas Department of Human Services*, 96 Ark. App. 247, 254, 240 S.W.3d 626, 631 (2006) for the proposition that "there must be more than a mere prediction or expectation on the part of the trial court that reunification services will not result in successful reunification." In *Yarborough*, however, this court affirmed a termination of parental rights due to sufficient evidence that reunification services were unlikely to succeed when there was a lengthy history of DHS involvement with the family, who was not reconciled despite the offering of many services. *Id.*

In response, DHS and the minor children argue that, despite many services offered to Whitney, including drug screens, counseling, parenting classes, and a psychological evaluation, "Whitney failed multiple drug screens; she failed to maintain employment; she was inconsistent with counseling; she consistently denied her drug addiction; and she lost the privilege of unsupervised visitation due to her falling asleep at visits." DHS and the minor children also cite caselaw to support their position that proof of services is not an element of the aggravated-circumstances ground and highlight that the "record only establishes that the Department failed to discuss the recommendations of Whitney's *second* drug and alcohol assessment with Whitney—not that the Department failed to refer her for treatment" at all.

Though she acknowledges that the provision of services by DHS is not a requirement for the aggravated-circumstances grounds, Whitney argues that DHS failed to meet its burden of proof that there was little likelihood that additional services would result in reunification, stating, "It was speculative that the appropriate family services would not result in reunification as those services had not been offered and there was nothing upon which to base whether she would or could successfully benefit from them." Where the evidence demonstrated that Whitney was not taking advantage of the counseling available to her, however, and further denied a drug problem at all, this argument is not persuasive.

Because Whitney failed to acknowledge her substance-abuse problem at all, DHS and the minor children argue that additional services would not likely have been beneficial and that termination was appropriate. Further, they argue that Whitney has waived an argument as to services that were not received since she never requested them, she denied needing services for drug treatment, and denied needing services to assist her to find a job. In *Peterson*, this court held that an appellant who "failed to request any of the specific services that he now claims were necessary to remedy the cause of removal . . . waived any services argument on appeal." *Long v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 372, at 19–20, ___ S.W.3d ___, ___.

With regard to Whitney's drug use, the circuit court specifically found the following at the conclusion of the hearing:

> Mom is adamant that she does not use meth, but as late as November, she was testing positive for methamphetamine and there was a hair follicle test, which

9

I -- where she was positive.  So I cannot find her testimony credible regarding her drug use or alleged lack of drug use.

The court went on to state, "Neither parent ha[s] consistent or . . . verifiable employment.  There have been a number of visits missed by the parents . . . with the kids.  And I find that despite the offer of appropriate family services, the parents have manifested an . . . incapacity or indifference to rehabilitate their circumstances."

In addition to drug use and unstable employment, this court has held that the inability to demonstrate sufficient parenting skills to regain custody of the children or to be trusted with a trial placement or unsupervised visitation can support an aggravated-circumstances finding.  *See, e.g.*, *Jones*, 2019 Ark. App. 299, at 8, 578 S.W.3d at 318.  We have also held repeatedly that the circuit court is in the best position to determine the credibility of the witnesses and make factual determinations.  *See, e.g.*, *L.W.*, 2011 Ark. App. 44, at 8, 380 S.W.3d at 494.  The court's finding regarding Whitneys' continued drug use was a factual determination that we decline to disturb on appeal.  *Morton v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 388, at 8, 465 S.W.3d 871, 876.  In light of the circuit court's factual findings in support, we cannot say that the court's termination on the basis of aggravated circumstances was clearly erroneous.  Because we hold that the circuit court properly terminated parental rights on the ground of aggravated circumstances, we need not address the remaining grounds.  *Helm v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 418, 501 S.W.3d 398.

10

For her final point on appeal, Whitney argues that the evidence was insufficient to prove that termination was in the juveniles' best interest. In considering the best-interest finding, the circuit court must consider the likelihood that the juvenile will be adopted and the potential harm that could be caused to the juvenile if returned to the parent. *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 7, 585 S.W.3d 725, 729–30. However, unlike statutory termination grounds, potential harm and adoptability are only factors for the circuit court to consider rather than essential elements of proof, and each factor need not be established by clear and convincing evidence. *L.W.*, 2011 Ark. App. 44, at 11, 380 S.W.3d at 496.

Whitney does not challenge the adoptability factor with regard to either child but argues instead that adoptability alone should not be the basis for a termination of parental rights. Because she does not challenge adoptability, however, this court is not required to address this issue on appeal. *See, e.g., Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 441, at 8, 587 S.W.3d 604, 608.

We move, then, to the second prong in the best-interest determination: potential harm. *L.W.*, 2011 Ark. App. 44, at 11, 380 S.W.3d at 496. In predicting potential harm, a circuit court is not required to identify actual harm. *See Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, at 12, 555 S.W.3d 915, 921. Whitney argues that the court's "potential-harm conclusion was contrary to the great weight of evidence, and [that] it was error to deny Whitney's request for more time." Whitney cites *Rhine v. Arkansas Department of Human Services*, 2011 Ark. App. 649, at 10, 386 S.W.3d 577, 583, for the assertion that "flawless

11

compliance" is not required; and *Mason v. Arkansas Department of Human Services*, 2022 Ark. App. 124, at 17–18, 642 S.W.3d 260, 270, for the assertion that "[a]s long as there is a reason to believe that a positive, nurturing parent-child relationship exists, the law favors preservation, not severance, of natural familial bonds." However, we have consistently held that continued drug use demonstrates potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case. *Lloyd*, 2022 Ark. App. 461, at 15, 655 S.W.3d at 544 ("Additionally, a parent's continued illegal drug use and instability are sufficient to demonstrate a risk of potential harm to the children.").

Under these facts, including the continuous denial of a drug addiction despite positive drug tests, it was not clearly erroneous for the court to conclude that Whitney's past behavior and relapse from unsupervised to supervised visitation demonstrated potential future harm to the children. *See Cox v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 202, at 10, 462 S.W.3d 670, 676 ("This court has held that past behavior is correctly viewed as a predictor of potential harm."). *See also Jones*, 2019 Ark. App. 299, at 8, 578 S.W.3d at 318. We cannot say that the circuit court's determination was clearly erroneous; therefore, we must affirm.

Affirmed.

KLAPPENBACH and THYER, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.